## Newport News Shipbuilding Employees' Credit Union, Inc.

### v.

## B & L Auto Body, Inc., et al.

Record No. 900569

January 11, 1991

Present: All the Justices

32

*Kimber L. White (James A. Howard,* on brief), for appellant.
*Donald Bennis (Carlton F. Bennett,* on brief), for appellee
B & L Auto Body, Inc.
No brief or argument for appellee Lawrence Cooper.

JUSTICE COMPTON delivered the opinion of the Court.

Code § 43-34 authorizes certain lienors to enforce their liens by sale of personal property at public auction for cash. In this appeal, we consider the validity of such a sale held to satisfy the lien of a bailee of a motor vehicle.

In October 1987, appellant Newport News Shipbuilding Employees' Credit Union, Inc., approved a loan to appellee Lawrence Cooper in the sum of $11,995 to finance the full purchase price of a 1985 Buick automobile. The credit union's security interest was duly recorded on the face of the title to the vehicle issued to Cooper by the Department of Motor Vehicles.

On October 13, 1988, Cooper discovered that the vehicle had been damaged by vandals while parked on a street in Norfolk near his residence. According to Cooper, the damage included "four flat tires, the windshield was busted out, [and it] had three scratches" on the exterior. Upon Cooper's request, appellee B & L Auto Body, Inc., also known as B & L Towing Service of Virginia, transported the vehicle on that date to its premises in Virginia Beach to be stored until Cooper could arrange to pay for repairs and the storage. Subsequently, Cooper applied to the credit union for funds to cover these charges. Before the transaction could be completed, however, B & L sold the vehicle at public auction in November 1988.

In December 1988, the credit union filed a "Petition and Bill of Complaint-Application for Temporary Injunction" naming as defendants B & L, Cooper, and the "Commissioner of the Division of Motor Vehicles." The credit union contended that B & L failed to give it proper and timely notice of the sale. It sought a temporary injunction against B & L and its "alleged vendee," as well as against the motor vehicle commissioner, to prevent issu-

ance of a new certificate of title to the vendee. Additionally, the credit union asked that B & L be ordered to reacquire the vehicle or, in the alternative, be ordered to pay the sum of $12,496.69. The credit union asserted that the sum represented the amount due on account of the note executed by Cooper to purchase the vehicle, for which it has a lien, and on account of unlawful conversion of the vehicle by B & L. The temporary injunction was entered by agreement of the parties in January 1989.

In December 1989, the case was heard by the trial court sitting without a jury. The credit union presented evidence on the notice issue. It also presented evidence of the value of the car both at the time of purchase and at the time the damage occurred. The credit union presented no evidence of the vehicle's value at the time of the sale.

At the conclusion of the credit union's case in chief, the trial court sustained B & L's motion to strike the evidence. The court ruled that the burden to establish the value at the time of sale was upon the credit union and, because there was no evidence of such value, the petition and bill of complaint should be dismissed.

We awarded the credit union an appeal from the trial court's February 1990 dismissal order, which also dissolved the temporary injunction. The only parties appearing on appeal are the credit union and B & L.

This dispute centers around the interpretation of Code § 43-34. The statute establishes the procedure for enforcement of liens acquired under Code § 43-31 (lien of innkeepers and others), § 43-32 (lien of keepers of livery stables, garages, and vehicles, among others), and § 43-33 (lien of mechanic for repairs to articles of personal property).

As pertinent to this controversy, Code § 43-34 provides that:

"Any person having a lien under §§ 43-31 through 43-33 and any bailee, . . . having a lien as such at common law on personal property in his possession which he has no power to sell for the satisfaction of the lien, if the debt for which the lien exists is not paid within ten days after it is due and the value of the property affected by the lien does not exceed $3,000, may sell such property or so much thereof as may be necessary, by public auction, for cash. The proceeds shall be applied to the satisfaction of the debt and expenses of sale, and the surplus, if any, shall be paid to the owner of the

property. Before making such sale, such person shall advertise the time, place, and terms thereof in a public place, and in case of property having a value in excess of $600 after giving ten days' prior notice to any secured party who has filed a financing statement against such property, and also give to the owner written notice as hereinafter provided. If such property is a motor vehicle required by the motor vehicle laws of Virginia to be registered, the person having such lien shall ascertain from the Commissioner of the Department of Motor Vehicles whether the certificate of title of the motor vehicle shows a lien thereon. If the certificate of title shows a lien thereon, the bailee proposing the sale of such motor vehicle shall notify the lienholder of record, by certified mail, at the address on the certificate of title of the time and place of the proposed sale ten days prior thereto. . . . If the value of the property is more than $3,000 but does not exceed $7,000, the party having such lien, after giving notice as herein provided, may apply by petition to any general district court of the county or city wherein the property is, or, if the value of the property exceeds $7,000, to the circuit court of such county or city, for the sale of the property; and if, on the hearing of the case on the petition, the defense, if any made thereto, and such evidence as may be adduced by the parties respectively, the court shall be satisfied that the debt and lien are established and the property should be sold to pay the debt, such court shall order the sale to be made by the sheriff of the county or city. . . . If the owner of the property is a resident of this Commonwealth, any notice required by this section may be served in the mode prescribed by § 8.01-296 or, if the sale is to be made without resort to the courts, by personal delivery or by certified or registered mail delivered to the present owner of the property to be sold at his last known address at least ten days prior to the date of the sale. . . . For purposes of this section, a public place shall mean a premises owned by the Commonwealth, a political subdivision thereof or an agency of either which is open to the general public.

"Whenever a motor vehicle is sold hereunder, the Department of Motor Vehicles shall issue a certificate of title and registration to the purchaser thereof upon his application containing the serial or motor number of the vehicle pur-

chased together with an affidavit of the lienholder that he has complied with the provisions hereof, or by the sheriff conducting a sale that he has complied with said order."

On appeal, the credit union argues, as it did below, that the purported notice of sale was wholly insufficient. The evidence showed that the following letter dated "11/09/88" addressed to Cooper was received by him by certified mail on November 14, 1988. A copy of the letter was received in like manner by the credit union on November 14. The letter was addressed "Dear Lawrence" from "Karry Scott Collection Manager." It stated:

"THE FOLLOWING VEHICLE IS LOCATED AT B & L AUTO BODY, INC., T/A B & L TOWING SERVICE OF VIRGINIA, 5004 VIRGINIA BEACH BOULEVARD, VIRGINIA BEACH, VIRGINIA. THERE ARE PENDING STORAGE AND TOWING CHARGES ON THE VEHICLE. THE VEHICLE WILL BE SOLD AT PUBLIC AUCTION TEN DAYS FROM RECEIPT OF THIS LETTER, IF NOT CLAIMED. ANY DEFICIENCY FROM AUCTION WILL BE YOUR RESPONSIBILITY TO PAY AS REGISTERED OWNER OF THIS VEHICLE."

The model, serial number, and license number of the Buick vehicle were included in the letter.

The evidence also showed that an advertisement appeared in a newspaper from November 24 through November 26, 1988 announcing an "Auto Auction" to be held on November 26 at 10 a.m. by "B & L Towing Service" with a Virginia Beach address of "120 Dorset Ave." Listed among the many "[a]bandoned & wrecked vehicles" to be sold was the Buick automobile in question. The credit union contends that the advertisement is insufficient because it was not published in "a public place" as required by the statute.

The credit union also argues, as it did below, that it was not required to prove the value of the vehicle at the time of sale. It contends that if the sale was invalid due to lack of proper notice, "the value of the vehicle at the time of sale is of no consequence and is irrelevant." In addition, the credit union contends that the statute places the burden on the storage lienor to prove the value

at the time of sale because such value, under the statute, determines the proper forum or method of enforcement of the lien.

On appeal, B & L, asserting that Cooper and the credit union had actual notice of the impending sale, contends that the "central issue" in the case is whether "sufficient evidence" was presented by the credit union upon the value of the vehicle when it came into B & L's possession and at the time of the subsequent sale. B & L argues that the credit union "never submitted to the court any evidence that the Cooper vehicle had a value in excess of $600.00." Thus, it says, the trial court correctly struck the credit union's evidence.

We disagree. Both B & L and the trial court have misconstrued the statute.

■ As we analyze the statutory provisions that are pertinent to this controversy, we observe that the language is set forth in plain terms. At the outset, the statute empowers the lienor to sell the personal property in his possession by public auction, for cash, if the debt for which the lien exists is not paid in ten days and if the value of the property affected by the lien does not exceed $3,000.

■ There is no requirement for court intervention prior to sale if the value of the personalty does not exceed $3,000. If, however, the value is more than $3,000 but does not exceed $7,000, the lienor, after giving notice, must apply to the appropriate general district court for an order of sale. And, if the value exceeds $7,000, the lienor, after notice, must apply to the appropriate circuit court prior to sale.

■ Contrary to B & L's contention, the $600 amount mentioned in the third sentence of the statute has no application to the sale of motor vehicles. That amount relates to a requirement of notice to "any secured party who has filed a financing statement" against the subject property. According to Code § 8.9-302(3)(b), the filing of a financing statement to perfect the security interest in a motor vehicle such as Cooper's is not required. Instead, the sale of such motor vehicles is governed by the specific provisions of the fourth and fifth sentences of § 43-34. Those sentences require the lienor to ascertain whether the certificate of title shows a lien. If it does, the bailee proposing the sale must give notice to the lienholder of record.

■ The statute has explicit notification requirements. Where, as here, a sale is attempted without court intervention, the third sentence of the statute requires the lienor, prior to sale, to advertise

the "time, place, and terms" of the sale "in a public place," and also to give the owner of the property "written notice" as provided in the enactment.

The term "a public place" means "a premises owned by the Commonwealth," one of its political subdivisions "or an agency of either which is open to the general public." An ad in a newspaper does not qualify as advertisement "in a public place" within the meaning of the statute.

The "written notice" to be furnished for a sale to be made without resort to the courts must be by personal delivery or by certified or registered mail to the property owner and, in the case of a motor vehicle, by certified mail to the lienholder of record. Those notices must be delivered at least ten days prior to the sale, according to the statute.

When measured by the statutory requirements, B & L's purported advertisement and notices of sale were utterly deficient. As noted, the newspaper ad was not an advertisement "in a public place." The written notices to Cooper and to the credit union gave either conflicting or incomplete information about the impending sale. We conclude that, in order to achieve the statutory purpose, the written notice, at the very least, should state the specific time and place of the sale.

The November 9 letter gave neither the specific time nor place of the sale. A statement that the sale will be held ten days "from receipt of this letter" is too indefinite because the date of sale depends upon receipt of the letter, a time uncertain. Even if it be assumed that the Virginia Beach Boulevard address contained in the letter was notice of the place of sale, this information conflicted with the reference to the Dorset Avenue address in the ad. And, we do not reach for discussion the effect of any actual notice Cooper and the credit union may have had of the specific time and place of the impending sale, as contended by B & L. The record fails to support any such conclusion of fact.

Because the credit union established, at least prima facie and probably conclusively, that the sale was invalid due to defective notice, the trial court erred in striking the credit union's evidence at the conclusion of its case in chief, holding that the credit union had failed to prove the value of the vehicle at the time of sale. At that stage of the proceeding, the vehicle's value was irrelevant to the question whether the sale was void for lack of notice. Once the credit union made out a prima facie case of a void sale

due to defective notice, the burden shifted to B & L to go forward and present evidence of a valid sale.

If the credit union's evidence had not been stricken, proof of value would have become relevant when B & L endeavored to show that a valid sale had been conducted. In submitting evidence of validity, B & L would have been required not only to rebut the proof of defective notice, but also to show that it had selected the proper forum or method of enforcement.

■ The forum or method employed is controlled by the vehicle's value at the time of sale. Therefore, the burden of establishing value is upon the possessor of the property, who has ready access to it for appraisal purposes and who has undertaken to conduct the sale.

■ Of course, once the sale's invalidity has been determined, the ultimate burden of proof is upon the credit union to establish any damages claimed as a result of the void sale.

Therefore, the judgment of the trial court will be reversed. The cause will be remanded for a new trial consistent with the views expressed in this opinion.

*Reversed and remanded.*